# United States Court of Appeals for the Federal Circuit

___

TEJERE J. AKPENEYE, JONATHAN ALLEN, SAHR ALPHA-K, JACQUES V. ALSTON, RODOLFO ANCHETA, JR., WAYNE A. ANTOINE, CARL ASLAKEN, MICHAEL BAKER, ROCHELLE BANKS, JAMES BOUYER, JR., MAIA BRADLEY, GWENDOLYN BROWN, KEVIN L. BROWN, LORI O. BROWN, TRACY BROWN, GEORGE BURNS, SHAWN R. BUTTERFIELD, BRAD BYRNES, RYAN H. CASE, CHRISTY CASSADY, JEFFREY CLUTE, DAVID L. COUSINS, DEXTER CUMBERBATCH, WILLIAM A. CUMMINGS, VERONICA COUTEE, CHARLES DELUGO, LENARDO ECCLES, BRANDYN FOX, CLYDE A. FRANKLIN, MARY B. GREEN, NICHOLAS GUZAN, PAUL GUZAN, LARRY W. HOLLMAND, PETER L. HOWELL, WARREN A. HUTTON, ANTHONY W. JACKSON, JEFFREY JOHNSON, GEORGE A. JONES, MICHAEL D. JONES, LUKE KORNACKI, MICHAEL J. LONG, OMAR F. MANN, CHRISLINA R. MARSHALL, JOSEPH A. MCCRAY, KENNEST MEADOR, JAVIER MONTERO, BERTRAND MOORE, WILLIAM NIEVES, SR., ALBERT D. NOONAN, GREGORY NORMAN, ROBERT OLEJNIK, LINDSAY M. ORTIZ, ALAN PITTS, ROBERT ROBINSON, BERNARD RUSSELL, JAVIER SANTIAGO, FRANCIS SARPONG, FRANCIS SELPH, ROOSEVELT SINGLETON, FRANKLIN D. TAYLOR, KEVIN TINDAL, SR., JOHN H. TRAVIS, ALEX TREJO, KENNETH TURNER, ANTHONY O. WASHINGTON, TWILA WILLIAMS, BYRON M. WILSON,
*Plaintiffs-Appellants*

**CHRISTOPHER M. BALDWIN, ZANDA BELL, ET AL.,**
*Plaintiffs*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

_____

2020-1622

_____

Appeal from the United States Court of Federal Claims in No. 1:15-cv-00732-MMS, Chief Judge Margaret M. Sweeney.

_____

Decided: March 15, 2021

_____

JONATHAN L. GOULD, Law Office of Jonathan L. Gould, Roxbury, CT, argued for plaintiffs-appellants. Also represented by STEPHEN GIRARD DENIGRIS, The DeNigris Law Firm PLLC, Albany, NY.

REBECCA SARAH KRUSER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JEFFREY B. CLARK, STEVEN JOHN GILLINGHAM, ROBERT EDWARD KIRSCHMAN, JR.; LUNDI MCCARTHY SHAFIEI, Headquarters Services & Pentagon Force Protection Agency, United States Department of Defense, Washington, DC.

_____

Before LOURIE, SCHALL, and DYK, *Circuit Judges*.

DYK, *Circuit Judge*.

Plaintiffs Tejere J. Akpeneye et al. are police officers employed by the Pentagon Force Protection Agency ("PFPA"). They appeal a decision of the United States Court of Federal Claims ("Claims Court") entering summary judgment in favor of the United States and rejecting their claim for overtime compensation under the Fair Labor Standards Act ("FLSA"). We affirm.

## BACKGROUND

### I

The FLSA was enacted in 1938 to protect workers "from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945), *superseded on other grounds by statute*, Portal-to-Portal Act of 1947, Pub. L. No. 80-49, 61 Stat. 84. To this end, the FLSA establishes a forty-hour workweek.[1] 29 U.S.C. § 207(a)(1). Employees are entitled to overtime compensation of at least "one and one-half times the regular rate" for any time worked in excess of forty hours. *Id.* By regulation promulgated by the Department of Labor, a "bona fide meal period," which must ordinarily be at least thirty minutes long, does not

---

[1] The FLSA provides an alternative workweek structure for fire protection and law enforcement personnel, entitling such employees to overtime when they work more than 212 hours for fire protection employees and 171 hours for law enforcement employees within a twenty-eight-day work period, or a proportional number of hours in a work period of less than twenty-eight days. 29 C.F.R. § 553.201; *see also* 29 U.S.C. § 207(k). The parties agree that Plaintiffs are not subject to § 207(k), and in any event, applying § 207(k) to Plaintiffs' claim would not change the outcome of this case.

qualify as "worktime." 29 C.F.R. § 785.19(a). Employees are thus not entitled to overtime compensation for time spent on qualifying meal breaks.

Here, in each two-week pay period, PFPA officers were assigned to ten shifts that were 8.5 hours long (five each week), during which they received two 35-minute breaks.[2] Under PFPA policy, Plaintiffs were compensated for their entire shift except for one 30-minute meal period.[3] Plaintiffs thus received two breaks per shift—one for which they were compensated and one for which they were not. Plaintiffs argue that they did not receive a bona fide meal period during either break period because they were required to work during all break periods, thereby causing Plaintiffs to work in excess of forty hours per week and entitling them to overtime compensation.

## II

Necessary to an understanding of the overtime claim is a description of the officers' duties. PFPA officers were responsible for security and law enforcement at the Pentagon reservation. On a day-to-day basis, an officer could have been assigned to an interior post, an exterior post, or a patrol unit; officers could also have been assigned to work as "breakers," whose role was to assume the duties of a post while another officer went on break.

PFPA officers could spend their breaks nearly anywhere on the Pentagon reservation, which includes two break rooms closed to the public. The break rooms contain

---

[2] Some PFPA officers were assigned to a different schedule incorporating 12.5-hour shifts with three 40-minute breaks, but the difference is immaterial to this appeal.

[3] Neither party attaches any significance to the fact that the scheduled breaks were thirty-five minutes long as opposed to thirty minutes long.

eating areas, microwaves, refrigerators, televisions, and computers.

PFPA officers were subject to various restrictions during their breaks. Officers were not allowed to leave the Pentagon reservation or remove their uniforms during break, or to act in a manner that would leave the public with a negative perception. Because the public would not necessarily know when an officer was on break, officers on break were not allowed to congregate in public—e.g., in a food court—or publicly engage in leisure activities such as having their shoes shined, watching videos online, or playing video games.

PFPA officers also had some duties while on break. They were required to remain vigilant and ready to respond to any emergencies that might arise—which occurred frequently at the Pentagon. If an officer was required to respond to an emergency or contingency during both break periods (and was thus unable to take a bona fide meal break), PFPA policy granted overtime pay for one break period. *See, e.g.*, J.A. 459 ("If a PFPA Police Officer is called to duty for a contingency during his/her bona fide meal break, he/she is entitled to be compensated with overtime or compensatory time."). Plaintiffs agree that such overtime payments were consistently granted when requested.

Remaining vigilant also required officers to constantly monitor their radios to be informed of any contingencies or emergencies. In addition to responding to emergency radio calls, until recently, officers were also required to respond to hourly radio checks.[4]

---

[4] The radio checks were discontinued because they interfered with PFPA operations by clogging radio bandwidth.

On break, officers were also required to respond to questions from other employees or members of the public at the Pentagon reservation. These interactions varied in length from under a minute to approximately ten minutes and occurred frequently during officers' breaks but could be avoided by going to a break room.

Besides their security duties and obligations to the public, PFPA officers often performed administrative duties during breaks. These administrative duties fell into three categories.

First, PFPA officers processed paperwork such as emails, personnel forms, time sheets, and incident reports. While not required to do so, officers often performed these duties while on break. Personnel forms took several minutes to read, sign, and discuss with a supervisor on a monthly or quarterly basis. Officers spent ten to fifteen minutes filling out time sheets every two weeks. Incident reports took between thirty and forty-five minutes to complete, and officers spent break time writing incident reports almost every day.

Second, PFPA officers were required to complete between eight and twenty mandatory training courses per year, which varied in length from twenty minutes to three hours. When a training course needed to be completed, officers were notified between seven days and almost a year in advance. Training courses could be completed during break time or while an officer was at a post with a computer, and at least some of the training courses were able to be paused and resumed at a different location. Officers reviewed or studied training materials multiple times a week, and sometimes nearly every day. Again, while not required, officers sometimes worked on training courses while on break.

Third, when stationed with a vehicle, officers were required to refuel their assigned vehicle, which typically took between 10 and 15 minutes once per shift. While not

required, this refueling was often done during a break. Officers were prohibited from using their vehicles on break to make special trips to buy food, but they were allowed get food at a nearby location while refueling. Officers were also required to spend around five minutes per shift inspecting their vehicle for damage, a task they were not required to perform while on break, but generally did perform during breaks.

### III

Plaintiffs filed suit under the FLSA, arguing that they did not receive a bona fide meal break and are therefore entitled to thirty minutes of overtime compensation per shift. The parties agreed to initially litigate the claim of twenty sample plaintiffs. After discovery, Plaintiffs and the government filed cross-motions for summary judgment. The Claims Court entered summary judgment in favor of the government. Plaintiffs conceded that they had no further evidence to present with respect to the non-sample plaintiffs that could change the disposition of their claims. The Claims Court then entered judgment in favor of the government, and Plaintiffs appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).[5]

### DISCUSSION

We review a grant of summary judgment by the Claims Court de novo. *Athey v. United States*, 908 F.3d 696, 705 (Fed. Cir. 2018) (citing *FastShip, LLC v. United States*, 892 F.3d 1298, 1302 (Fed. Cir. 2018)). Summary judgment is appropriate when the movant shows that there is no

---

[5] Plaintiffs also brought a claim for overtime compensation for time spent donning and doffing their uniforms that is not before us on appeal. The Claims Court ruled against Plaintiffs on this claim after a bench trial. Plaintiffs have not appealed the judgment in the government's favor on this claim.

genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. *Id.*

I

This appeal requires us to first determine whether the Claims Court applied the correct legal standard to Plaintiffs' meal break claim under the FLSA.

In cases involving meal break claims, the central issue is whether employees are required to "work" within the meaning of the FLSA. *E.g.*, *Reich v. S. New. Eng. Telecomms. Corp.*, 121 F.3d 58, 64 (2d Cir. 1997) (citing *Henson v. Pulaski Cnty. Sheriff Dep't*, 6 F.3d 531, 533–34 (8th Cir. 1993)). While the FLSA does not define "work," the Supreme Court has held that "work," for purposes of the FLSA, means "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944), *superseded on other grounds by statute*, Portal-to-Portal Act of 1947, Pub. L. No. 80-49, 61 Stat. 84, *as recognized in Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27 (2014). The Supreme Court's approach in *Tennessee Coal* established the "predominant benefit" test, which looks to whether the employer or the employee is the primary beneficiary of the meal break, even if the meal period is subject to interruptions, duties, or restrictions. *See* 321 U.S. at 598.

By contrast, the Department of Labor has interpreted the FLSA to require that, during a "bona fide meal period," which is "not worktime," employees "must be *completely relieved from duty* for the purposes of eating regular meals." 29 C.F.R. § 785.19(a) (emphasis added). "The employee is not relieved if he is required to perform *any* duties, whether active or inactive, while eating." *Id.* (emphasis added).

Consistent with these two different interpretations of the FLSA, courts have fashioned two tests to determine

whether a meal break is compensable.  The first, relying on a literal reading of the Department of Labor regulation, is the more stringent "complete relief" test.  Under the complete relief standard, employees must be compensated for meal breaks that are subject to any ongoing work duties.  This is the rule utilized in the Ninth Circuit.  *E.g.*, *Brennan v. Elmer's Disposal Serv., Inc.*, 510 F.2d 84, 88 (9th Cir. 1975) (citing, inter alia, 29 C.F.R. § 785.19) ("An employee cannot be docked for lunch breaks during which he is required to continue with any duties related to his work."); *Alonzo v. Akal Sec. Inc.*, 807 F. App'x 718, 719 (9th Cir. 2020) (citing *Busk v. Integrity Staffing Sols., Inc.*, 713 F.3d 525, 531–32 (9th Cir. 2013), *rev'd on other grounds*, 574 U.S. 27 (2014)) ("We apply the 'completely relieved from duty' test to determine whether a meal period is bona fide."); *see also Busk*, 713 F.3d at 531–32 (quoting *Brennan*, 510 F.2d at 88) ("FLSA does not require compensation for an employee's lunch period, but an 'employee cannot be docked for lunch breaks during which he is required to continue with any duties related to his work.'").

The second approach, following the Supreme Court's decision in *Tennessee Coal*, applies the predominant benefit test.  As the Third Circuit has noted, the overwhelming majority of circuits have rejected "a literal reading" of the Department of Labor's regulation on meal breaks and have instead adopted the predominant benefit test.[6]  *See*

---

[6]  *See, e.g.*, *Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 64 (2d Cir. 1997); *Babcock v. Butler County*, 806 F.3d 153, 156–57 (3d Cir. 2015); *Roy v. City of Lexington*, 141 F.3d 533, 544–45 (4th Cir. 1998); *Bernard v. IBP, Inc.*, 154 F.3d 259, 264–65 (5th Cir. 1998); *Hill v. United States*, 751 F.2d 810, 823–14 (6th Cir. 1984); *Alexander v. City of Chicago*, 994 F.2d 333, 337 (7th Cir. 1993); *Henson v. Pulaski Cnty. Sheriff Dep't*, 6 F.3d 531, 534 (8th Cir. 1993); *Lamon v. City of Shawnee*, 972 F.2d 1145, 1155–58

*Babcock v. Butler County*, 806 F.3d 153, 156–57 (3d Cir. 2015). Like most of our sister circuits, we agree that we must adhere to the Supreme Court's interpretation of "work" under the FLSA, rather than following the literal language of the Department of Labor's regulation, which is not binding on this court, as the regulations themselves recognize. *See Reich*, 121 F.3d at 64–65; *see also* 29 C.F.R. § 785.2 ("The ultimate decisions on interpretations of the [FLSA] are made by the courts.").

To be sure, although we are not bound by the regulation, the Supreme Court has held that the Department's "interpretations and opinions . . . while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance," *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)—a principle that has come to be known as "*Skidmore* deference" after the FLSA case. But applying *Skidmore* deference here does not lead us to depart from the predominant benefit test.

We therefore adopt the predominant benefit test as the standard for determining whether a break is compensable under the FLSA. At oral argument, Plaintiffs' counsel conceded that the predominant benefit test should apply. The Claims Court properly used the predominant benefit test in its analysis.

The most important factor to consider when applying the predominant benefit test is whether an employee is required to perform any "substantial duties" or give up a "substantial measure" of time and effort during a meal break. *Ruffin v. MotorCity Casino*, 775 F.3d 807, 811–12 (6th Cir. 2015) (quoting *Hill v. United States*, 751 F.2d 810,

---

(10th Cir. 1992); *Birdwell v. City of Gadsden*, 970 F.2d 802, 807–10 (11th Cir. 1992).

814–15 (6th Cir. 1984)); *see also Singh v. City of New York*, 524 F.3d 361, 371 (2d Cir. 2008) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946)) ("It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.").

Like the Claims Court below, we need not decide whether the employer or employee has the burden of proof under the predominant benefit test, since it would not affect the resolution of this case.

## II

We now consider whether the Claims Court correctly applied the predominant benefit test to conclude that there were no genuine issues of material fact. The officers contend that the claims court misapplied the predominant benefit test.

Whether a break is predominantly for the employer's or employee's benefit is a question of fact that requires careful analysis of the totality of the circumstances. *See Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944) ("Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case."); *Skidmore*, 323 U.S. at 136–37 ("Whether in a concrete case [idle] time falls within or without the [FLSA] is a question of fact to be resolved by appropriate findings of the trial court."); *see also, e.g.*, *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 370 (4th Cir. 2011) (holding that compensability of meal breaks is a question of fact to be resolved by the trial court); *Bernard v. IBP, Inc.*, 154 F.3d 259, 265 (5th Cir. 1998) ("Whether meal time is predominantly for the benefit of the employer is a question of fact that is ordinarily resolved by the trier of fact after hearing all of the evidence.").

Case: 20-1622   Document: 35   Page: 12   Filed: 03/15/2021
Case 1:16-cv-01722-MMS   Document 125   Filed 03/15/2021   Page 12 of 18

12                                              AKPENEYE v. UNITED STATES

A

As an initial matter, Plaintiffs argue that the Claims Court should have held that the government was bound by the testimony of its Rule 30(b)(6) witness, PFPA Chief of Police Woodrow Kusse. In his deposition, Chief Kusse testified that he did not "believe that there's ever a period that you [the officers] would be completely relieved of duty or off-duty during your tour." J.A. 196. He further opined that officers who were "on-call" during a break still qualified as being "on-duty." J.A. 229.

Plaintiffs contend that this testimony constitutes a binding admission against the government under Rule 30(b)(6) of the Rules of the United States Court of Federal Claims. However, it appears that Chief Kusse was applying the complete relief standard. *See* J.A. 196. In any event, "legal conclusions given during a 30(b)(6) deposition are generally not binding on the deponent entity." *King v. United States*, 119 Fed. Cl. 277, 285 (2014) (citing *Asten-Johnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 229 n.9 (3d Cir. 2009)), *aff'd*, 627 F. App'x 926 (Fed. Cir. 2016). Chief Kusse's remarks as to Plaintiffs' duty status were legal conclusions and were thus not binding on the government. The Claims Court correctly focused on Plaintiffs' "actual obligations," rather than Chief Kusse's characterization of those obligations. *See* J.A. 23.

B

Plaintiffs next argue that they performed security-related duties during their breaks and that, in effect, they were on standby status during their breaks. They were required to remain vigilant, carry a radio, remain in a state of readiness, and respond to emergencies and contingencies as necessary. They were also required to answer radio checks during part of the period in question.

Plaintiffs point to Supreme Court cases holding that standby status can constitute the performance of work.

They particularly rely on *Armour & Co. v. Wantock*, 323 U.S. 126 (1944), and *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

In those cases, the plaintiffs were hired as private firefighters who remained on call overnight at company firehalls. *Armour*, 323 U.S. at 127–28; *Skidmore*, 323 U.S. at 135. The firefighters had no duties during this time except to respond to alarms and attend to the sprinklers in the event they went off. *Armour*, 323 U.S. at 127; *Skidmore*, 323 U.S. at 135. In both cases, the plaintiffs' employers provided the firefighters with sleeping quarters and various amusements in the firehalls, such as playing cards, radios, and a pool table. *See Armour*, 323 U.S. at 128; *Skidmore*, 323 U.S. at 136. In *Armour*, the Supreme Court affirmed that such waiting time was compensable because the firefighters had been hired to "wait for threats to the safety of the employer's property," holding that such idle time is not in principle beyond the scope of the FLSA. 323 U.S. at 133–134. Similarly, in *Skidmore*, the Court held that "no principle of law found either in the statute or in Court decisions precludes waiting time from also being working time" and remanded for further proceedings. 323 U.S. at 136.

Here, Plaintiffs on their meal break were in a significantly different position. Whereas the firefighters in *Armour* and *Skidmore* were the only employees on duty during their idle time, *see* 323 U.S. at 127–28; 323 U.S. at 135–36, when Plaintiffs took their meal breaks, they were relieved by "breakers" who covered the duties of their post. This line of authority addressing the compensability of idle standby time is therefore inapposite to Plaintiffs' meal breaks.

Plaintiffs cite several cases from circuit courts and state supreme courts awarding overtime compensation under the FLSA to police, security officers, and others based on standby duties, but these cases are also distinguishable.

In *Lindell v. General Electric Co.*, 44 Wash. 2d 386 (1954), and *Kohlheim v. Glynn County*, 915 F.2d 1473 (11th Cir. 1990), the courts applied the complete relief standard, which we have held is inconsistent with the statute.[7]

In other cases Plaintiffs rely on, the employees were not permitted to leave the immediate worksite during their breaks, *Reich*, 121 F.3d at 63, or substantially performed their regular duties during break periods, *Raper v. Iowa*, 688 N.W.2d 29, 49–51 (Iowa 2004) (police officers spent most of their meal time discussing patrol business and were required to remain visible and available to the public); *Bernard*, 154 F.3d at 263–65 (5th Cir. 1998) (maintenance workers on break frequently responded to maintenance problems and were required to wear their tools and radios); *Lamon v. City of Shawnee*, 972 F.2d 1145, 1156 (10th Cir. 1992) (police officers were obligated to take breaks in public so that they could respond to crimes committed in their presence, emergency calls, and inquiries from the public); *Banks v. Mercy Villa Care Ctr.*, 407 N.W.2d 793, 795–97 (Neb. 1987) (maintenance worker required to remain on premises and allowed to work during meal breaks); *Martin Neb. Co. v. Culkin*, 197 F.2d 981, 984–85 (8th Cir. 1952) (guards and firefighters were

---

[7] In *Alexander v. City of Chicago*, 994 F.2d 333 (7th Cir. 1993), despite the "myriad regulations" governing Chicago police officers' conduct while on meal breaks, *see* 994 F.2d at 334–35, the district court granted judgment on the pleadings and motions to dismiss in favor of the city, *id.* at 335. On appeal, the Seventh Circuit did not find that the officers were necessarily entitled to compensation. Instead, the court explained that while "a judge or a jury as factfinder might ultimately find for the defendant," the issue required further "development of the facts to enable a capable application of the appropriate predominant benefit standard." *Id.* at 339 & n.9.

primarily "engaged to wait" and spent their lunch breaks "engaged in their regular duties").

Thus, the mere fact that Plaintiffs had ongoing security duties during their breaks does not, in and of itself, transform them into standby employees who were hired to wait or render their meal breaks primarily for the government's benefit. This does not suggest that the officers' standby obligations were irrelevant. The existence of standby duties of sufficient significance in this context could mean that the break time was primarily for the government's benefit. But that was not the case here. While contingencies and emergencies requiring a response arise frequently at the Pentagon reservation, Plaintiffs concede that they were not required to take their breaks in public; that their breaks were not interrupted on a daily basis; and that they could not recall a shift during which both breaks were interrupted. That is, if Plaintiffs were interrupted during one break period, they were able to use their other break period as a meal period. Furthermore, PFPA policy allowed the officers to seek and secure overtime compensation if both breaks were interrupted. In short, the PFPA already had in place a system for compensating Plaintiffs for those meal breaks that were in fact compensable—i.e., when Plaintiffs' security duties prevented them from being the primary beneficiary of their meal breaks. According to Plaintiffs' own testimony, requests for overtime under this policy have never been denied.

Because Plaintiffs were able to use their other break period as a meal period if one of their break periods was interrupted, because they could take their breaks outside of the public eye, and because PFPA policy allowed officers to file an overtime request if both breaks were interrupted, we find that the Claims Court correctly determined that Plaintiffs' ongoing security duties during breaks did not entitle them to overtime.

C

Plaintiffs argue that their administrative duties—such as completing paperwork, maintaining their vehicles, completing training courses, and responding to questions from the public—made significant intrusions into Plaintiffs' meal breaks. We disagree. As the Claims Court explained, on any given day, Plaintiffs spent only a short time writing reports, filling out personnel documents, checking their emails, reviewing training materials, and refueling vehicles. Some of these tasks, such as trainings and checking email, were able to be completed when officers were on duty at a post with a computer. Additionally, because Plaintiffs received two breaks during a shift, they also had the option of attending to their administrative tasks during a compensable break rather than a noncompensable meal break.

As for the requirement that Plaintiffs answer questions from the public while on breaks, the Claims Court correctly found that this responsibility did not render Plaintiffs' meal breaks compensable. Plaintiffs were able to avoid the public entirely on breaks by going to a break room; when interactions with the public did occur, they were frequently short enough that they did not impede Plaintiffs' ability to use their meal breaks as they wished.

D

Plaintiffs argue that restrictions imposed on them, notwithstanding their meal breaks, weigh in their favor. They contend that they were required to remain in uniform and on the Pentagon reservation during their meal breaks. The Claims Court acknowledged that the government benefited from these restrictions on Plaintiffs' meal breaks, as the mere presence of uniformed officers served as a deterrent to illegal activity on the Pentagon reservation. However, while these restrictions did benefit the government, they did not meaningfully interfere with Plaintiffs' ability to enjoy their breaks or pursue activities for their own benefit. Plaintiffs were able to move freely throughout the

Pentagon reservation and avail themselves of its break rooms and amenities, and their uniforms did not prevent them from using their break time as they pleased. We thus agree with the Claims Court that the location and uniform restrictions on Plaintiffs' breaks did not cause their breaks to primarily benefit the government.

The same is true of the restrictions on Plaintiffs' personal activity during their meal breaks. The Claims Court found that during breaks, Plaintiffs were not allowed to congregate with one another or engage in other leisure activities while in public. In this respect, the record also suggests—though it is less than clear on this point—that uniformed PFPA officers were not allowed to use their meal breaks to run personal errands, such as shopping, getting a haircut, or getting a shoe shine, even if they remained on the Pentagon reservation. *Compare* J.A. 208–09 (testimony of Chief Kusse that officers may "pursue those things . . . on their own time"), *with* J.A. 203 (testimony of Chief Kusse that officers "can attend to whatever personal business or meal that [they] wish during that 30-minute period").

The Claims Court found that these restrictions were immaterial for two reasons: first, because Plaintiffs were still permitted to use their breaks to engage in other public activities, such as buying food at a Pentagon restaurant or using Pentagon amenities, and second, because Plaintiffs were still able to congregate or enjoy leisure activities without restriction in a non-public break room. We agree with the Claims Court that these restrictions did not make the government the primary beneficiary of Plaintiffs' meal breaks, thereby entitling Plaintiffs to compensation.

E

Having reviewed individually each of the restrictions and duties that bear upon Plaintiffs' meal breaks, we must also consider them in the aggregate. We agree with the Claims Court that, in the totality of the circumstances,

Plaintiffs were the primary beneficiaries of their meal breaks.  As the undisputed facts show, and the Claims Court correctly concluded, Plaintiffs were not so burdened by their ongoing responsibilities and restrictions as to be unable to take at least one uninterrupted meal break per shift.  That is, even if Plaintiffs were required to use some break time to respond to an emergency, complete their administrative tasks, or respond to public questions, and even if they were subject to some restrictions while on break, the evidence and Plaintiffs' own admissions show that they were generally able to enjoy the primary benefit of at least one thirty-minute break period during a given shift.

We therefore agree with the Claims Court's conclusion that Plaintiffs received the predominant benefit of their noncompensable meal breaks, and that they were not entitled to overtime compensation.

**AFFIRMED**